1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   FRAYNO CRUMB,                        Case No. 2:14-cv-6718-DDP (GJS)
12              Plaintiff
                                          **ORDER GRANTING**
13        v.                              **DEFENDANTS' MOTION TO**
                                          **DISMISS**
14   CAPTAIN D. MEADORS, et al.,
                                          [Dkt. 39]
15              Defendants.
16
17
18
19        Presently before the court is Defendants M. Wofford, M. Taylor-Snel, C.

20   Wofford, D. Meadors, and R. Henderson's ("Defendants") Motion to Dismiss

21   Plaintiff's First Amended Complaint. (Dkt. 39.) After reviewing the parties'

22   submissions and the Report and Recommendation of the United States Magistrate

23   Judge, the court GRANTS the Motion and adopts the following Order.[1]

24
25
                _____
26
27   [1] The Court has adopted the majority of this Order from the Report and
     Recommendation of the United States Magistrate Judge. Further, the court has
28   conducted a de novo review of all objected-to portions of the Report.

1

2   **I. BACKGROUND**

3       **A. Procedural History**

4       On August 27, 2014, Crumb lodged a civil rights complaint asserting claims

5   under 42 U.S.C. § 1983 along with a request to proceed without prepayment of

6   filing fees.  [Dkt. 1.]  The Court granted Crumb's request to proceed without

7   prepaying fees, and, pursuant to 28 U.S.C. § 1915, screened and dismissed the

8   Complaint.  [Dkts. 2, 6.]  Crumb filed a First Amended Complaint on February 17,

9   2015—the now operative complaint.  [Dkt. 9 ("FAC").]  The Court ordered the FAC

10  served on Defendants R. Henderson, D. Meadors, Taylor-Snel, C. Wofford, and M.

11  Wofford on May 7, 2015.  [Dkts. 13-15.]

12      On August 6, 2015, Crumb moved for entry of default against Defendants

13  [Dkt. 25], even though, as the docket reflects, Defendants' signed waivers entitling

14  them to respond by September 8, 2015.  [*See, e.g.*, Dkts. 26-28, 42, 47-51.]  In any

15  event, Defendants moved to dismiss the FAC on August 27, 2015.  [Dkt. 39.]

16  Crumb filed an opposition on March 29, 2016.  [Dkt. 67 ("Opp.")], and Defendants

17  replied on April 7, 2016 [Dkt. 69].

18      **B. Allegations of the First Amended Complaint**[2]

19      On February 16, 2010, Crumb was convicted of robbery in the second degree

20  and sentenced to 25 years in state prison.  [FAC at 5 ¶ 1.]  At Calipatria State Prison,

21  Crumb was brought before the Unit Classification Committee ("UCC"), composed

22  of non-defendant correctional officers on April 5, 2011.  [*Id.* ¶ 2.]  An anonymous

23  request was made for an R-suffix review.[3]  [*Id.* ¶ 3.]  After review, the UCC

24  _____

25

26  [2] The Court notes that the pages appear to be out of order.  The Court relies on the document as scanned in ECF.

27  [3]  An R-suffix connotes that an inmate requires different custodial treatment because

28  he has committed, or has been alleged to commit, a sex offense.  *See* Cal. Code Regs. tit. 15, § 3377.1 (discussing conditions for impose an "R" suffix

concluded "that CDCR lacked sufficient evidence and elected not to apply the R suffix to [Crumb's] central CDCR file."  [*Id.*; *see also* FAC, Ex. B at 29 (report explaining UCC decision not to affix R suffix).]

Crumb was then transferred to Lancaster State Prison.  [FAC at 8.]  There, Crumb received a new suffix review, to be governed by the Institutional Classification Committee ("ICC").  [*Id.* ¶ 4.]  "Crumb received his 72-hour notice for the purpose of [the] review.  Prior to the committee reviewing and discussing this case, Crumb was introduced to the committee members."  [FAC, Ex. C. at 32.]  M. Wofford, D. Meadors, Taylor-Snel, and C. Wofford, as ICC committee members, had reviewed the police report from a dismissed 2007 rape case and spoken to the district attorney.  [FAC at 8 ¶ 5.]  They preliminarily concluded that an R-suffix was appropriate.  [*Id.*]  Crumb was given the opportunity to respond, at which time he explained the hardship that would befall him from receiving such a designation, and that he had never committed or been convicted of committing any sex crimes.  [*Id.* ¶ 6.]  The ICC found that "application of the R suffix is appropriate."  [FAC, Ex. C, at 32-33.] After the determination had been made, Crumb was given the right to appeal the decision.  [FAC at 9 ¶ 7.]

At his hearing, Crumb had complained that his life would be endangered by application of an R-suffix because sex offenders are regularly attacked.  [*Id.*]  Captain Meadors responded, "We know but don't worry they won't find out."  [*Id.*]  According to the FAC, because certain inmate clerks have access to inmate records, other inmates did find out.  [*Id.*]  Gang members approached Crumb and threatened to stab him if he did not "make a hit" for them and "hold their knives."  [*Id.*]

Crumb explained the situation to staff members, who put Crumb in administrative segregation for his own safety.  [*Id.* ¶8.]  While in segregation, he

classification).

met with Captain Meadors and asked him to remove the R-suffix because he would never be safe. [FAC at 10 ¶ 10.] Meadors refused. [*Id.*] Nonetheless, he received a separate hearing before the ICC on May 17, 2012. [*Id.* ¶ 11.] Crumb again pled for them to remove the R-suffix, and said he would not be safe so long as it was attached to his name. [*Id.*] The ICC placed him on "Sensitive Needs Yard" duty and told him to tell a staff member if anything occurred. [*Id.*]

Crumb was then transferred to Salinas Valley State Prison. [*Id.* ¶ 13.] There, on April 23, 2013, he was attacked twice in two hours by different inmates because, "once again, inmates had found out that I was labeled a sex offender[.]" [*Id.*] Because of these incidents, Crumb is "now a patient in the mental health program [due] to suicidal tendencies and severe depression and mental anguish." [FAC at 11 ¶ 14.]

## II. LEGAL STANDARDS

### A. General Rule 12(b)(6) Motion to Dismiss Standards

A defendant is entitled to dismissal under Rule 12(b)(6) when a complaint fails to state a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Conclusory allegations are insufficient. *Id.* at 678-79. Although a complaint need not set forth detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

4

On review of a Rule 12(b)(6) motion, the Court accepts all facts alleged in a complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Gant v. Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014).  For an allegation to be "entitled to the assumption of truth," it must be well-pleaded, that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion.  *Iqbal*, 556 U.S. at 682.

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted) (quoted in *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1025 (9th Cir. 2014)).  Nevertheless, courts must "continue to construe *pro se* filings liberally when evaluating them under *Iqbal*, particularly in civil rights cases."  *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (*quoting Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)) (internal quotation marks omitted).

**B. Standards Governing Motions to Dismiss Based On a Failure to Exhaust Administrative Remedies**

In *Albino v. Baca*, the Ninth Circuit set forth the standard and principles for evaluating exhaustion in the context of civil rights cases governed by the Prison Litigation Reform Act.  747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  Relying on the fact that "[f]ailure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove,'" the Ninth Circuit determined it must be resolved according to the ordinary application of the Federal Rules of Civil Procedure.  *Id.* *Albino* also told courts that, although "rare," where "a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Id.*  And though the Ninth Circuit foretold that summary judgment or trial by judge would often be necessary, it also explained that "the exhaustion question in PLRA cases should be decided as early as feasible," and "at the outset of the litigation." *Id.* at 1170.

5

# III. DISCUSSION

## A. The FAC Cannot Be Dismissed for Lack of Exhaustion on Motion to Dismiss.

### 1. The California Exhaustion Administrative Procedure

"Any inmate or parolee under the [California Department of Corrections and Rehabilitation ("CDCR")] jurisdiction may appeal any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). The CDCR's appeal process consists of three levels of appeal: (1) a first level appeal filed with one of the institution's appeals coordinators unless exempted; (2) a second level appeal filed with the institution head or designee; and (3) a third level appeal filed with the CDCR Appeals Chief in the Office of Appeals. §§ 3084.7, 3084.8. The inmate must submit an appeal within 30 days of the event being appealed or of first having knowledge of the action or decision being appealed, whichever is later. § 3084.8(b). A prisoner exhausts the appeal process when he completes the third level of review. § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." § 3084.1(b).

### 2. FAC Allegations about Crumb's Exhaustion

The FAC attaches numerous documents related to Crumb's attempt to exhaust his grievance. Whether taken as allegations or as subject to judicial notice, the result is the same. According to the FAC, Crumb appealed his prison classification on July 11, 2012, which after correcting deficiencies, was resubmitted for first level review on August 2, 2012. [FAC at 17.] The first level appeal was denied on August 21, 2012. [FAC at 23-24.]

Crumb appealed three days later, had the appeal screened out, and then resubmitted his appeal to the Second Level Review. Ultimately, his second level

6

1    appeal was denied on November 2, 2012.  [FAC at 20-21.]  Crumb was transferred

2    to a new prison just eight days later.  [FAC at 13.]

3            On January 11, 2013, the CDCR Office of Appeals cancelled Crumb's

4    grievance process because he failed to submit a third level appeal within the

5    required period.  [FAC at 15.]  Crumb challenged the cancellation and claimed that

6    he did not receive the second level denial until December 12, 2012, and therefore

7    timely submitted his response for third level review on December 16, 2012.  [FAC

8    at 13.]  The Office of Appeal concluded that the second level review was returned to

9    Crumb on November 5, 2012, and that it did not receive his third level appeal until

10   December 27, 2012.  [FAC at 13-14.]  It also rejected Crumb's argument that he

11   received the second level review response on December 12, 2012, explaining that

12   "he did not submit the envelope/mailing from LAC to show that the cause for his

13   delay in receiving the SLR was [due] to his mail being rerouted to MCSP."  [FAC

14   at 13.]

15           3.    Analysis

16           Under 42 U.S.C. § 1997e(a), a prisoner may not bring an action "with respect

17   to prison conditions under [42 U.S.C. §] 1983 . . . until such administrative remedies

18   as are available are exhausted."  A prisoner must "exhaust administrative remedies

19   even where the relief sought—monetary damages—cannot be granted by the

20   administrative process."  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v.*

21   *Churner*, 532 U.S. 734 (2001)).  And he must do so *properly—i.e.*, in compliance

22   with an agency's deadlines and other critical procedural rules.  *Id.* at 90-91, 93.  And

23   as the Supreme Court said in *Jones v. Bock*, the "proper exhaustion" "requirement

24   [is] not satisfied when grievances [are] dismissed because prisoners had missed

25   deadlines set by the grievance policy."  549 U.S. 199, 217-18 (2007).  However,

26   "administrative remedies are 'effectively unavailable'—and … the PLRA's

27   exhaustion requirement is therefore excused—where prison officials improperly

28   screen a prisoner's grievance or grievances that would have sufficed to exhaust the

1    claim that the prisoner seeks to pursue in federal court."  *Sapp v. Kimbrell*, 623 F.3d

2    813, 828 (9th Cir. 2010).

3           Because failure to exhaust is "an affirmative defense the defendant must plead

4    and prove," *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007), "[t]he defendant's burden

5    is to prove that there was an available administrative remedy, and that the prisoner

6    did not exhaust that available remedy." *Albino*, 747 F.3d at 1172.  "Then, the burden

7    shifts to the plaintiff, who must show that there is something particular in his case

8    that made the existing and generally available administrative remedies effectively

9    unavailable to him by 'showing that the local remedies were ineffective,

10   unobtainable, unduly prolonged, inadequate, or obviously futile.'  The ultimate

11   burden of proof, however, remains with the defendants." *Williams v. Paramo*, 775

12   F.3d 1182, 1191 (9th Cir. Jan. 7, 2015) (quoting *Albino*, 747 F.3d at 1172) (internal

13   citations omitted).

14          Here, the Court cannot conclude that "a failure to exhaust is clear on the face

15   of the complaint" to render this the "rare" case under *Albino* resolvable on a Rule

16   12(b)(6) motion.  The Court agrees that the FAC demonstrates a *prima facie* case of

17   non-exhaustion; *i.e.*, Crumb did not file a successful third level appeal.  That said,

18   the burden then shifts to Crumb to show that his remedies were effectively

19   unavailable.  The Court cannot say that the FAC alone conclusively demonstrates

20   Crumb's non-exhaustion.  As Crumb incorporates the third level decision into his

21   pleading, his argument that he received notice of the second level decision on

22   December 12, 2012 is also incorporated.  Under Cal. Code Regs § 3084.8(b), Crumb

23   had to submit his appeal "within calendar 30 days of … of first having knowledge of

24   the action or decision being appealed"—which by his account gave him until

25   January 11, 2013 to submit a timely appeal.  Since the FAC alleges that Crumb filed

26   an appeal on December 27, 2012, the real question in the exhaustion inquiry is

27   whether his third level appeal was properly screened out.  If it was not, under *Sapp*,

28   he had no remaining effective remedy, and thus properly exhausted his claim.

1    Resolution of this issue therefore requires factual development beyond the materials

2    submitted in the FAC.

3    **B. The FAC Does Not State Any Cognizable Claims.**

4         To state a viable claim under 42 U.S.C. § 1983, Crumb must allege an

5    underlying "deprivation of any rights, privileges, or immunities secured by the

6    Constitution and laws."  Here, Crumb alleges that Defendants, as ICC members,

7    wrongly classified him as a sex offender (*i.e.*, gave him an "R classification"),

8    resulting in denial of "right to family visits (conjugal) and minor children and any

9    other minor child" and threats from other inmates to his safety.  [*See, e.g.*, FAC at 5,

10   7.]

11        At the outset, because Crumb did not identify a specific legal theory in his

12   Complaint and did so only vaguely in his opposition, the Court must guess at

13   Crumb's theories.  This is not itself fatal, but it makes the Court's task more

14   difficult.  *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008) ("it is sufficient that

15   the complaint, alone or supplemented by any subsequent filings before summary

16   judgment, provide the defendant fair notice.") (quoted in *Walker v. Beard*, 789 F.3d

17   1125, 1134 (9th Cir. June 18, 2015)).  Accordingly, the Court considers the

18   following potential claims: (1) that he did not receive adequate process, in violation

19   of the Fourteenth Amendment; (2) that the R-suffix was wrongly imposed, in

20   violation of the Fourteenth Amendment; (3) that his right to family visitation was

21   violated; and (4) that Defendants violated Crumb's Eighth Amendment right to be

22   protected from other inmates.[4]  None of these survive scrutiny.

23   _____

24

25   [4] Crumb also raises certain amorphously defined state law claims.  [*See, e.g.*, Opp. at
     3 (claiming violations of California constitution).]  Because the Court dismisses all

26   the federal claims, it need not consider the merits of any state law claims because
     the Court declines to exercise supplemental jurisdiction over them.  *Gini v. Las*

27   *Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (quoted in *Wiley v.*
     *Dep't of Children & Family Servs.*, No. 13-56915, 2015 WL 8732562, at *1 (9th

28   Cir. Dec. 15, 2015)) ("When ... the court dismisses the federal claim leaving only

1                           1.   Due Process Challenge to R-Suffix Classification

2               "The Fourteenth Amendment's Due Process Clause protects persons against

3    deprivations of life, liberty, or property; and those who seek to invoke its procedural

4    protection must establish that one of these interests is at stake." *Wilkinson v. Austin*,

5    545 U.S. 209 (2005).  Here, the court must address whether Plaintiff's R-suffix

6    classification implicated a liberty interest, and thus, whether Plaintiff was entitled to

7    procedural protections under the Due Process Clause.  Evaluating a due process

8    claim is a two-part inquiry: first, the court must determine whether a liberty interest

9    is implicated, and second, it must determine what process is due.  *Neal v. Shimoda*,

10    131 F.3d 818, 827 (9th Cir. 1997).

11               Beginning with the claimed liberty interest, the court notes that the Ninth

12    Circuit has held that an inmate has a protected liberty interest in not being declared a

13    sex offender, at least where the regulations require mandatory treatment and

14    confession to past sex offenses as a precondition to parole.  *See Neal*, 131 F.3d at

15    828.  There, the Court noted that it could "hardly conceive of a state's action bearing

16    more 'stigmatizing consequences' than the labeling of a prison inmate as a sex

17    offender," and concluded that it was these consequences, in combination with the

18    mandatory treatment program, which gave rise to a protectable liberty interest.  *Id.*

19    at 829-30.  Subsequent decisions have clarified that stigma alone is insufficient to

20    implicate a liberty interest.  *See Am. Civil Liberties Union of Nevada v. Masto*, 670

21    F.3d 1046, 1058 (9th Cir. 2012). Instead, as the Ninth Circuit explained in a case

22    challenging the constitutionality of a sex offender registration and notification law,

23    the court must determine whether "stigma plus an alteration in legal status can

24    encroach on a cognizable liberty interest."  *Masto*, 670 F.3d at 1058.

25

26

27    state claims for resolution, the court should decline jurisdiction over the state claims

28    and dismiss them without prejudice." (citation and internal quotation marks omitted; alteration in original)).

The FAC alleges that the "R classification" is more than a mere security and housing classification, but instead is a sex offender designation. [*E.g.*, FAC at 5 (explaining that the "R. suffix … notation designates me as a sex offender").] According to the FAC, that designation became known to others. [*Id.* ("My life was threatened by inmates [due] to the fact that they had found out that I have been wrongly labelled a sex offender.").] That said, the FAC does not adequately allege any "alteration in legal status" inherent in the R-suffix classification to elevate it above mere stigma. *See Masto*, 670 F.3d at 1058. Under similar circumstances, district courts have concluded that classification alone does not give rise to a liberty interest. *See, e.g.*, *Arnold v. Sullivan*, No. 1:07-cv-00687-OWW-GSA PC, 2009 WL 224077, at *3 (E.D. Cal. 2009); *Stevens v. Robles*, No. 06-cv-2072-LAB (LSP), 2008 WL 667407, at *7 (S.D. Cal. 2008).

Although Plaintiff has not adequately alleged a protectable liberty interest in the FAC, his Objections to the Report and Recommendation state that his R-suffix classification will require him to register as a sex offender when he is paroled. Plaintiff does not direct the court to any authority stating that an R-suffix classification necessarily requires registration as a sex offender upon parole. In this case, the court need not decide whether the plaintiff had a liberty interest in the R-suffix classification because, even assuming he did, Plaintiff has received all the process due.

In *Wolff v. McDonnell*, the Supreme Court identified procedural protections that must be afforded an inmate where there is a liberty interest in avoiding a particular decision or condition of confinement. In addition to a hearing, prison officials must prove: 1) written notice of the charges or allegations to be considered at the hearing, 2) a brief period after notice, no less than twenty-four hours, to prepare for the hearing, 3) a written statement by the fact-finder regarding the evidence and reasons for the finding; 4) an opportunity to seek assistance if the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539,

1   563-70 (1974). Here, Plaintiff concedes that these requirements were met. His

2   Complaint acknowledges that he was given notice that hearing would be held at

3   least 72 hours in advance, he was told what evidence would be relied upon, and he

4   was given an opportunity to respond to the decisions. [FAC at 8.] While Plaintiff

5   ultimately disagreed with the conclusion of the ICC, he was nonetheless told of the

6   basis for the designation and the arrest records and charging documents that

7   informed Defendants' decision to apply the R-suffix classification. [FAC at 35.]

8   Under the circumstances, the court finds that no additional process was required and

9   concludes that Plaintiff has failed to state a due process challenge to his R-suffix

10  classification.

11          2.     Sufficiency of the Evidence Supporting an R-Suffix Classification

12          Crumb's second theory—that the evidence supporting his R-suffix

13  classification was insufficient—also fails. Where a liberty interest is implicated,

14  procedural due process requires, in addition to the rights described above, that

15  "some evidence" support an administrative determination in the prison context. *See*

16  *Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013) ("procedural, not

17  substantive, due process guarantees inmates that their validation will be based on

18  some evidence."); *see also Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

19  Crumb's second challenge, repeated throughout the FAC, is that he was

20  "wrongfully" classified as a sex offender.  [*See, e.g.*, FAC at 5.]  His argument, at

21  the hearing and implicitly here, is that he was improperly classified because he was

22  never convicted of a sex offense.  [*See, e.g.*, *id.*; FAC at 32-33.]

23          The "some evidence" standard is "minimally stringent," and asks only

24  "whether there is *any evidence* in the record that could support the conclusion."

25  *Castro*, 712 F.3d at 1314 (quoting *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994)

26  and *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003)).  The applicable regulation,

27  15 Cal. Code Regs. § 3377.1(b), allows the R-suffix to be designated based on

28  "records of arrest, detention or charge" of a sex offense, along with the "district

12

attorney's comments related to each arrest."  The FAC does not allege that Crumb was not charged with a sex offense, only that he was not convicted of one.  [FAC at 5.]  In fact, Crumb tacitly acknowledges that he was charged with a sex offense—a 2007 rape.  [*See* FAC at 8 ¶ 5.]  Accordingly, the face of the FAC discloses that some evidence supports the administrative determination that he be R-suffix classified.[5]  This claim too should be dismissed.

### 3.   Right to Family Visitation and Conjugal Visits

Next, Crumb claims that Defendants violated his right to family visitation and conjugal visits as a violation of his First, Eighth, Fifth, and Fourteenth Amendment rights.  [Opp. at 5-6.]  As Defendants correctly point out, Crumb maintains no federal constitutional right to either of these prison privileges.  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' … and therefore is not independently protected by the Due Process Clause."); *Block v. Rutherford,* 468 U.S. 576, 589 (1984); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) ("it is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits.") (quoted in *Shallowhorn v. Molina*, 572 Fed. App'x 545, 547 (2014)).  Accordingly, this claim is not a cognizable basis for relief.

---

[5] The Court's ruling does not reflect any agreement that the R-suffix determination was proper.  The prior UCC report finding no sufficient evidence of sexual misconduct presented reasons to question whether an incident had occurred: negative toxicology reports taken only hours after the alleged assault (contradicting the victim's story) and the lack of injury.  [*See* FAC at 29.]  Nor could the Court determine on the current record that the determination was improper, as the Court does not have access the all of the information before the ICC.  In any case, the Court's review must be, as mentioned above, extremely deferential.

4.   Eighth Amendment Failure to Protect Claim

Finally, Crumb alleges that Defendants are responsible for the assaults against him because of his R-suffix.  Presumably, Crumb's theory is that, had the ICC members not designated him as a sex offender, he would not have been attacked later at a different prison.

It is true that "prison officials have a duty [under the Eighth Amendment] … to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  However, not "every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  Rather, "[f]or an inmate to bring a valid § 1983 claim against a prison official for a violation of the Eighth Amendment, he must first objectively show that he was deprived of something 'sufficiently serious.'" *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citations omitted).  He must also show that the prison official acted with deliberate indifference, *i.e.*, that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 837, 842).  Finally, Crumb had to show that "the defendants' actions were both an actual and proximate cause of their injuries." *Id.* (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by* 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Applying these standards, Crumb has failed to plead a Section 1983 claim premised on an Eighth Amendment violation because he fails to demonstrate the requisite mindset and proximate causation.  Assuming the R-suffix was the reason that Crumb was attacked, Crumb fails to show any culpable state of mind on behalf of the ICC members.  More importantly, it is not clear how their assessment—which is supposed to be kept unknown to other prisoners—could be the reason for an attack by inmates at a different prison absent intervening misconduct.  Perhaps the officers would be culpable if they (with the requisite mental state) leaked the

14

1    information to prisoners, expecting them to attack Crumb.  But those facts are

2    nowhere near what the FAC alleges.  Nor does the FAC allege that the ICC

3    members were confronted with a specific threat to Crumb that went unaddressed.

4    Quite the opposite: it appears that, in response to threats related to the R-suffix,

5    some of the same prison officials Crumb sues (1) put Crumb in administrative

6    segregation for his own protection, and (2) moved him to the sensitive duty yard,

7    where he remained without further incident (until his transfer to a different prison).

8    [*See, e.g.*, FAC at 9 ¶8, 10 ¶ 11.]  The FAC essentially seeks to hold the ICC

9    members liable for any action taken by anyone, anywhere, because of someone

10   else's disclosure of Crumb's R-suffix designation.  This is improper, and does not

11   give rise to an Eighth Amendment violation.  This claim too must be dismissed.

12      **C. Leave to Amend**

13      If claims are dismissed, "[u]nder Ninth Circuit case law, district courts are

14   only required to grant leave to amend if a complaint can possibly be saved.  Courts

15   are not required to grant leave to amend if a complaint lacks merit entirely."  *Lopez*

16   *v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see Rosati v. Igbinoso*, 791 F.3d

17   1037, 1039 (9th Cir. June 26, 2015) ("A district court should not dismiss a pro se

18   complaint without leave to amend unless 'it is absolutely clear that the deficiencies

19   of the complaint could not be cured by amendment.'" (internal citations and

20   quotation marks omitted)).  Leave to amend is not appropriate, even given the

21   liberal pleading standard for *pro se* litigants, when "the pleading 'could not possibly

22   be cured by the allegation of other facts.'"  *Ramirez v. Galaza*, 334 F.3d 850, 861

23   (9th Cir. 2003) (*quoting Lopez*, 203 F.3d at 1131).

24      Because Crumb's first three claims are all predicated on non-cognizable legal

25   theories, the Court dismisses them without leave to amend.  As for the failure to

26   protect claim, Crumb has pled facts inconsistent with the ICC members' liability.

27   The Magistrate Judge recommended that this claim also be dismissed without leave

28   to amend provided that Crumb's Objections did not suggest that he could plead that

15

the classification committee members themselves were responsible for inmates learning of the R-suffix. The Magistrate Judge also noted that Crumb should explain in his Objections whether he is aware of other correctional officers responsible for his R-suffix becoming known to others and how he might amend his complaint to assert claims against these other officers. None of Crumb's objections alter the analysis of the Magistrate Judge on this claim nor do they warrant granting leave to amend.

IV. **CONCLUSION**

For all of the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss. The First Amended Complaint is dismissed without leave to amend. Further, Plaintiff's motion for entry of default is DENIED as moot. Finally, Judgment shall be entered dismissing this action with prejudice.


**IT IS SO ORDERED.**


Dated: December 22, 2016


_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE